STATE *ex rel.*, FRANKLIN COUNTY, WAKULA COUNTY, TAY-
LOR COUNTY CITRUS COUNTY, PASCO COUNTY, MONROE
COUNTY, DIXIE COUNTY, and GULF COUNTY, v. J. M.
LEE, as State Comptroller.

188 So. 775
Opinion Filed May 12, 1939

*H. H. Wells, B. K. Roberts* and *Weldon G. Starry, S.
Whitehurst's Sons,* for Relators;

*George Couper Gibbs,* Attorney General, *H. E. Carter* and *J. Compton French,* Assistant Attorneys General for Respondent.

TERRELL, C. J.— On petition of Relators, alternative writ of mandamus was issued herein directed to the Comptroller commanding him to apportion to Franklin, Wakula, Taylor, Citrus, Pasco, Monroe, Dixie, Gulf, and Hernando Counties, the proceeds of one cent of the second Gas Tax now available for distribution as part of the State Road Distribution Fund on the basis of the area of each of said counties, that is to say, in the proportion that the area of each of said counties bears to the area of all the counties inclusive of that area in the Gulf of Mexico adjacent to the uplands of said counties out to the state boundary line which has not heretofore since the effective date of Chapter 15695, Acts of 1931, been so included or to show why he refuses to do so. The comptroller now· moves to quash the alternative writ.

The Comptroller first contends that the alternative writ should be quashed because other counties in the State are vitally interested and are not made parties to the alternative writ.

The general rule is that only those who seek to compel the performance of a duty and those upon whom the duty is imposed are necessary parties to a proceeding in mandamus but here, nine counties of the State are seeking to compel the performance of a duty which if proper to be performed, vitally affects every other county of the State. In some of the counties, it will completely disrupt their fiscal system and have a marked effect on their credit standing. Under such circumstances, we think this case is an exception to the general rule and that all counties affected should be made parties to the cause. Bigham v. State, *ex rel.* Ocala Brick and Tile Company, 115 Fla. 852, 156 So. 246.

But if the proper parties were here under the facts shown to exist, are Relators in position to urge or require a re-

apportionment of the funds brought in question on the basis they seek?

Chapter 15659, Acts of 1931, provides (1) that the individual counties shall be reimbursed for their contribution to the State Road System, (2) a method was provided for ascertaining the amount contributed by each county to the State Road System, (3) it levied a second gas tax of three cents to accomplish this purpose, and (4) provided for the allocation of the second gas tax to the counties as follows: one cent on the basis of area, one cent on the basis of population, and one cent on the basis of previous of contribution by the counties for State roads.

We are concerned here with the distribution of the one cent on the basis of area, the act providing as follows:

"The proceeds of one cent of said second Gas Tax shall be apportioned to the credit of the several counties on the basis of area of said counties, that is to say, the apportionment shall be to the county in the proportion that the area of the county shall bear to the area of all the counties."

The responsibility for making the distribution under the act as quoted was laid on the Comptroller. The return to the alternative writ shows that the Comptroller proceeded in a very systematic careful manner to do this. The Legislature did not define the word "area" as employed in the act. The Comptroller did not overlook the fact that the counties named as Relators bordered on the Gulf of Mexico and that the boundary all around the peninsula was placed by the Gulf stream or three leagues distance from the mainland. In other words, there was a water area in front of and belonging to each of the relator counties.

This water area was eliminated from the computed area of Relators when the distribution of the tax was made and that is the reason for this litigation. The Comptroller was advised by the Attorney General to do this. The basis for

this decision was that the distribution on the basis of area grew out of indebtedness for roads, that roads had a direct relation to the land area and had no relation to the water area in front of the lands, that land area and not water area has all to with the debt incurred and the reason for the tax and its apportionment to the counties. All lakes, rivers, land locked bays, lagoons, and other inclosed bodies of water were included in the computation of area because they had to be bridged or encircled and for this reason bore a direct relation to the distribution of the tax on the area basis. Such a construction was approved by this Court in Carlton v. Matthews, 103 Fla. 301, 137 So. 815.

This construction of the act by the Comptroller has been acquiesced in four sessions of the Legislature, in other words, eight years have elapsed and no attempt has been made to change or modify it. The change proposed by Relators does not seek to increase or decrease the amount each county will receive for its contribution to the State Road system. It seeks to increase the rate or amount Relators will receive. The present and future fiscal policy of all the counties has been predicated largely on the distribution of this tax. Under Chapter 14486, Acts of 1929 (State Board of Adminstration Act) the counties appropriate their part of the tax to the redemption and payment of bonds and in this way, reduce their ad valorem taxes accordingly. Both the taxpayers and the bond holders rely on these payments to carry the obligations of the counties. A change such as proposed would throw many bond issues into default and would throw into confusion and uncertainty the fiscal policy of many if not all the counties of the State.

In addition to the foregoing, the water boundary of Relators and other counties runs along the Gulf stream or a distance of three leagues from the shore. These bound-

aries are inconstant and being so, an accurate determination of the area of these water lanes for the purpose of the act would not be possible and if approximately accurate today would be different tomorrow. No roads have been constructed over these water areas except the east coast extension and there is no possibility of there being any in the near future.

The very purpose for the tax brought in question was the construction and maintenance of roads and the payment of bonds issued for roads already constructed over the land areas of the counties. In this view of the case, there is no basis in equity for apportionment of any portion of the tax to Relators by reason of the water lanes adjacent to them which constantly fluctuate.

It follows that the construction of the act adopted by the Comptroller is reasonable and just. It provides a constant basis of apportionment while that insisted on by Relator would be inconstant and impregnated with inequality. Four sessions of the Legislature have observed its operation yet not one time has it moved to change the Comptroller's construction of the term "area" or to disturb his method of distributing the tax. The showing is not sufficient to warrant the Court in doing so.

An adminstrative construction of long standing is very persuasive and will not be disturbed except it be erroneous or unreasonable. Robertson v. Downing, 127 U. S. 607, 8 Sup. Ct. 1328, 32, L. Ed. 269; State *ex rel* Bennett v. Lee, 123 Fla. 252, 166 So. 565; Robinson v. Fix, 113 Fla. 151, 151 So. 512; State *ex rel* Woodward v. Lee, 114 Fla. 855, 155 So. 138; Bloxham v. Consumers Electric Light and Street Railroad Company, 36 Fla. 519, 18 So. 444, 25 R. C. L. 1043-46.

We must therefore conclude that in view of these considerations the meaning of the term "area" as applied by the

Comptroller was reasonable and just and that since it was not challenged until material rights vested under it, it would now be improper and inequitable to permit the challenge. It would upset and force a reshaping of the fiscal set up in many counties and throw others into confusion. When this is the case the challenge comes to late.

The motion to quash the ·alternative writ is therefore granted.

It is so ordered.

WHITFIELD, BROWN, CHAPMAN and THOMAS, J., concur.

BUFORD, J., dissents.

BUFORD, ·J. (dissenting).—I am unable to agree with the opinion prepared in this case by Mr. Chief Justice TERRELL, I think it was the legilative intent in the use of the area as a basis for computing the distribution of the second Gas Tax that the entire area in each county should be applied. The tax was levied on all the gasoline sold, whether to be used on the land or on the water, whether in the enterprise of farming or in the enterprise of fishing.

It is a matter of common knowlege, of which we must take cognizance, that many thousands of gallons of gasoline are bought and the tax paid thereon for use on the waters constituting a part of the area of each of the Relator counties in fishing and boating enterprises, and it is also a matter of general knowlege· that the volume of fishing and boating is directly and greatly affected by roads.· Therefore, these waters do have a very real relation to the necessity for and the use of roads. There is no more reason for eliminating the water area of a county than there would be for the elimination of the hundreds of thousands of acres· of inaccessible, cut-over wild lands in the several counties, which lands are neither served with roads nor are fit for human habitation and where gasoline is never used.

The record shows that the hundreds of thousands of acres covered by the fresh water lakes and streams in Florida are included areas in the several counties where such lakes and streams exist. Lake Okeechobee, for instance, which is the second largest body of water wholly in the United States, is included in the area of Palm Beach County. Lake Okeechobee and thousands of other lakes in Florida have no more relation to roads than has the salt water within the boundaries of either of the counties Relators in this suit but all of such lakes do constitute a part of the area of the counties in which they lie just as the salt waters constitute a part of the areas involved in this suit.

I am also unable to agree that other counties have any justiciable interest in this suit. The suit is not to reduce the area to be caluated on behalf of any county. As long as any county has calculated in its behalf all the area lying within its borders, it has all in that regard which the statute contemplates. If the Comptroller had in making the calculation for apportioment for distribution eliminated the area of the lakes in Lake County and Lake County had brought a proceeding in mandamus to compel their inclusion Leon County would certainly have no justiciable interest in that litigation and would neither be a proper or necessary party to such. And so it is, when Franklin County brings its proceedings in mandamus to coerce the Comptroller to revise his calculation so as to include all of both land and water area of that county as the area basis for the distribution of the fund involved, Leon County has no justiciable interest in this suit.

It is my opinion that the elimination of the salt water area complained of in this suit in making computation for the distribution to the involved counties was not justified in reason or in law and I think the motion to quash the alternative writ should be denied.